IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| J.B. BURLISON, JR., ) | |
| ) | |
| PLAINTIFF, ) | No. 3:13-01277 |
| ) | Judge Nixon/Brown |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN, ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| DEFENDANT. ) | |

**To: The Honorable Judge John T. Nixon, Senior United States District Judge**

## REPORT AND RECOMMENDATION

For the reasons explained herein, the Magistrate Judge **RECOMMENDS** that the Plaintiff's Motion for Judgment on the Administrative Record (the record) (Docket Entry (DE) 13) be **DENIED**, and the Commissioner's decision be **AFFIRMED**.

### I. Procedural History

The Plaintiff protectively filed for Disability Insurance Benefits (DIB) on February 16, 2010. (DE 10, p. 116).[1] He initially claimed an onset date of January 21, 2010 and disability due to the following: depression, panic attacks, hernia, high blood pressure, and dizzy spells. (DE 10, pp. 116; 133). On July 23, 2010, the Commissioner denied the DIB claim. (DE 10, p. 50). On August 05, 2010, the Plaintiff timely filed for reconsideration. (DE 10, p. 54). On September 21, 2010, the Commissioner again denied the DIB claim. (DE 10, p. 55).

On October 29, 2010, the Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). (DE 10, p. 68). On April 25, 2012, the Plaintiff appeared before the ALJ,

---

1 Page numbers referring to the record herein reflect the Bates Stamp.

William O. Gray. (DE 10, p. 24). Also appearing were David Boatner (Mr. Boatner), the vocational expert (VE) and Brenda Benson (Ms. Benson), the Plaintiff's attorney. (DE 10, p. 24). On May 02, 2012, the ALJ decided that the Plaintiff was not disabled under section 223(d)(1)(A) of the Social Security Act (the Act) (DE 10, p. 10). On June 29, 2012, the Plaintiff timely requested that the Appeals Council (AC) review the decision. (DE 10, p. 172). On September 16, 2013, the AC denied the request (DE 10, p. 1).

On November 18, 2013, the Plaintiff timely brought the instant action and filed a Motion to Proceed *in forma pauperis*. (DE 1-2). On November 22, 2013, the Court granted the Plaintiff's Motion. (DE 3). On February 06, 2014, the Defendant filed the Answer and the record. (DE 9, 10). On March 11, 2014, the Plaintiff filed the Motion for Judgment on the Record and Memorandum in Support of the Motion pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Social Security Administration (the SSA), as set out by the ALJ. (DE 12-13). On May 22, 2014, the Defendant filed a Response in Opposition. (DE 16). On June 05, 2014, the Plaintiff filed a Reply. (DE 17). Pursuant to the Court's Order on February 07, 2014, granting the Plaintiff 14 days after service of the Defendant's Response in which to file a reply brief (DE 11), the Plaintiff's Reply was timely. The matter is now properly before the Court.

## II. Review of the Record

### A. Relevant Medical Evidence

In 2006, the Plaintiff presented to Dickson Medical Associates (Dickson Medical), where he was prescribed medications for hypertension, depression, and anxiety. (DE 10, pp. 175-79; 182-85). On January 08, 2010, a provider documented that the Plaintiff had shoulder pain that was possibly bursitis. (DE 10, p. 186). On January 21, 2010, the Plaintiff saw John Salyer, M.D. (Dr. Salyer) at Dickson Medical, who increased the dosage frequency of the Plaintiff's anxiety

medication. (DE 10, p. 189). On January 25, 2010, providers at Dickson Medical documented the Plaintiff's high blood pressure and stable anxiety. (DE 10, p. 190). On February 17, 2010, Dr. Salyer increased the Plaintiff's anxiety medication. (DE 10, p. 191). On October 11 and November 11, 2010 as well as February 11 and August 16, 2011, the Plaintiff saw Dr. Salyer who documented that the Plaintiff had type II diabetes mellitus. (DE 10, pp. 234-48). On February 11, 2011, Dr. Salyer completed a Medical Source Statement, reporting that the Plaintiff had no limitations. (DE 10, p. 254).

On April 01, 2010, the Plaintiff presented to Centerstone Clinic (Centerstone) with reports of depression. Tracey Groves (Ms. Groves) diagnosed the Plaintiff with severe, recurrent major depressive disorder, and panic disorder with agoraphobia.[2] (DE 10, p. 204). On May 05, 2010 Ms. Groves reported the Plaintiff's "slight improvement." (DE 10, p. 205). The Plaintiff reported that he had been "helping out friends through the flood . . . [and that] this ma[de] him feel better about himself." (DE 10, p. 205). In June, July, and August of 2010, the Plaintiff continued to see Ms. Groves. (DE 10, pp. 255-56; 260-68). The Plaintiff returned to Centerstone in March of 2012 and reported being unable to work and not having insurance. (DE 10, p. 257). On March 12, 2012, Ms. Groves wrote a letter indicating that the Plaintiff "reports daily panic attacks and does not handle change . . . has extreme difficulty in social situations . . . [and] [h]is impairments . . . would hinder him from performing under job pressure." (DE 10, p. 275).

B.   **Consultative Examiner Assessments on behalf of Disability Determination Services**

On May 15, 2010, Bruce Davis, M.D. (Dr. Davis) performed a medical consultative examination. (DE 10, p. 192). Dr. Davis reported that the Plaintiff had high blood pressure, dizziness, blood vessel damage, left shoulder pain, a ventral hernia, anxiety, depression, and

---

[2] Dorland's Illustrated Medical Dictionary 40 (Elsevier 2012) (1900) (Agoraphobia: intense, irrational fear of open spaces, characterized by marked fear of venturing out alone or of being in public places where escape might be difficult or help might be unavailable. It may be associated with panic attacks or may occur independently.).

reduced grip strength in his left hand. (DE 10, p. 192-93). He reported that the Plaintiff could sit, stand, or walk for 1 to 2 hours continuously and for 6 hours in an 8 hour workday, that he could lift 20 pounds and carry 10 to 20 pounds frequently, and that he was limited in left arm reaching or a forceful grip, abrupt changes, climbing, or extreme heat or cold. (DE 10, p. 194).

On May 24, 2010, Thomas Pettigrew, Ed. D. (Mr. Pettigrew) completed a psychological evaluation. (DE 10, p. 196). He documented that the Plaintiff "demonstrated his ability to understand . . . [and] no impairment in attention, concentration, or persistence . . . ." (DE 10, p. 198). Dr. Pettigrew documented that the Plaintiff "communicated effectively and maintained socially appropriate behavior." (DE 10, p. 198).

On June 25, 2010, Karen Lawrence, Ph. D. (Dr. Lawrence) completed a Psychiatric Review. (DE 10, p. 209; 232). She documented that the Plaintiff had major depressive disorder and panic disorder that were not severe. (DE 10, pp. 209-21).

On July 19, 2010, Anita Johnson, M.D. (Dr. Johnson) completed a physical Residual Functional Capacity (RFC) assessment. (DE 10, p. 223; 233). She found no medically determinable impairment for the Plaintiff's left arm limitations noted in Dr. Davis's report. (DE10, p. 229). She found that the Plaintiff could sit, stand, or walk for 6 hours in an 8 hour workday, that he could lift or carry 10 pounds frequently, and that he could lift or carry 20 pounds occasionally. (DE 10, p. 224).

### C. Testimonial Evidence

#### 1. Plaintiff and Witness Testimony

On April 25, 2012, the Plaintiff appeared before the ALJ. (DE 10, pp. 24-46). When asked to describe his impairments, he testified, "I just [cannot] remember a lot, and I [cannot] deal with stuff . . . I just more or less [cannot] cooperate, and just [cannot], you know, do the

right stuff or whatever." (DE 10, pp. 28-29). He testified that he gets a "scared feeling" around others. (DE 10, p. 29). He testified that his major problem is his mental health. (DE 10, p. 38).

The Plaintiff testified that he last worked in a "high security place" where he felt like he was "looking out a tunnel where you can only see one way out." (DE 10, p. 29). He testified that as a result of these feelings, his employer sent him to his physician who "gave [him] the Family Leave Act because [his] depression ha[d] gotten much worse." (DE 10, p. 30). He testified that he would miss 2 or 3 days of work each week due to these problems. (DE 10, p. 31).

The Plaintiff testified that getting up is a struggle, that his sister goes to the store for him, and that he stopped driving in 2008 because it made him nervous. (DE 10, pp. 30-31). He testified that he has panic attacks daily and is unable to concentrate. (DE 10, pp. 31-32). He testified that although he watches television, he will not always remember what he watches. (DE 10, p. 33). He testified that once he is accustomed to doing something, if an employer changed that, he would feel like "everything just goes wrong." (DE 10, p. 33). The Plaintiff also testified that he takes medication for high blood pressure and diabetes. (DE 10, p. 38).

The ALJ clarified that the Plaintiff had been treated at Centerstone in 2010, and again in March 2012, but not in the interim due to financial reasons. (DE 10, pp. 34-35). Ms. Benson read the March 12, 2012 letter from Ms. Groves into the record because the letter was not before the ALJ. (DE 10, pp. 36-37). The Plaintiff testified that the loss of his mother "pushed [him] over the edge." (DE 10, p. 39). He testified that he would be unable to sustain an 8 hour workday at a desk job because he would not "be capable of doing the right things." (DE 10, p. 39).

## 2.     Vocational Expert Testimony

The VE testified that the Plaintiff worked for 27 years under two job titles. (DE 10, p. 27). The first job title was a lift truck operator, which is semi-skilled[3] work requiring a medium level of strength[4] and the second job title was a general laborer, which is unskilled work with an SVP of 2 and requiring a medium level of strength. (DE 10, pp. 27-28). The ALJ then presented the VE with a hypothetical scenario:

> A person limited to medium, light, and sedentary levels of exertion, and the individual works better with things than with people, and the things that he works with would be simple and repetitive, no more than 1 to 3 steps, and he cannot deal with more than infrequent changes, probably should indefinitely work for periods of 2 hours at a time in an 8 hour day with customary breaks, and could formally say hello to a coworker . . . he would need a supervisor who is . . . understanding of the fact the he probably [will not] accept criticism well . . . .

(DE 10, p. 41). The VE testified that there are a number of jobs that the Plaintiff could perform under this hypothetical. (DE 10, p. 41). The VE testified that the Plaintiff could perform work as (1) a general laborer, with 4,800 employed in Tennessee and 780,000 employed nationally in this job; (2) a hand packager, with 5,500 employed in Tennessee and 690,000 employed nationally in this job; (3) a textile worker, with 1,600 employed in Tennessee and 245,000 employed nationally in this job; (4) a folding machine tender, with 510 employed in Tennessee and 192,000 employed nationally in this job; (5) an inspector, with 680 employed in Tennessee and 240,000 employed nationally in this job;  (6) an assembler, with 1,400 employed in Tennessee and 334,000 employed nationally in this job; or (7) an injection molding machine tender, with 700 employed in Tennessee and 250,000 employed nationally in this job. (DE 10, pp. 42-44).

---

3 Social Security Ruling 00-4P, 2000 WL 1898704 ("The Dictionary of Occupational Titles (DOT) lists a **specific vocational preparation (SVP)** time for each described occupation. Using the skill level definitions in 20 C.F.R. § 404.1568, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT.") (emphasis added).

4 20 C.F.R. § 404.1567 ("To determine the physical exertion requirements of work in the national economy, [jobs are classified] as *sedentary, light, medium, heavy, and very heavy*.") (emphasis added).

The ALJ asked the VE how the Plaintiff's testimony, if the ALJ found it credible, would affect the job market. (DE 10, p. 44). The VE testified that, given the "nonexertional/mental health issues that [the Plaintiff] described . . . [he] would not be able to sustain any sort of work at any level of strength or skill." (DE 10, p. 45). Finally, the VE testified that if the Plaintiff was off task 20% of the time at a job, missed 3 or 4 days each month, or took unscheduled 30 minute breaks, that he would be unable to sustain a job. (DE 10, pp. 45-46).

### III. Analysis

#### A. Standard of Review

The issue before the Court, pursuant to 42 U.S.C. § 405(g), is limited to whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the ALJ applied the correct legal standards. *Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 434 (6th Cir. 2010) (unpublished opinion) (quoting *Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir.1994)). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Carrelli*, 390 F. App'x at 434 (quoting *Cutlip,* 25 F.3d at 286). The Court "may not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Carrelli*, 390 F. App'x at 434. If there is "substantial evidence" in the record that supports the ALJ's decision and the ALJ applied the correct legal standard, then the Court must affirm the final decision, "even if the Court would decide the matter differently, and even if substantial evidence also supports the [Plaintiff's] position." *Carrelli*, 390 F. App'x at 434 (citing *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.1986) (en banc)).

### B.       Administrative Proceedings

Disability is defined for Title II DIB claims as an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ uses a five-step sequential evaluation for DIB claims to determine whether the Plaintiff meets this definition of "disabled." 20 C.F.R. § 404.1520(a)(4)(i)-(v).

    i.    If the Plaintiff is engaged in substantial gainful activity, the Court will find that the Plaintiff is not disabled.

    ii.    If the Plaintiff *does not* have a severe medically determinable physical or mental impairment meeting the duration requirement or a combination of such impairments, the Court will find that the Plaintiff is not disabled.

    iii.    If the Plaintiff *does* have an impairment(s) that meets or equals one of the listings of impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (Appendix 1) and meets the duration requirement, the Court will find that the Plaintiff is disabled.

    iv.    The court considers the Plaintiff's RFC and past relevant work. If the Plaintiff can still perform their past relevant work, the Court will find that he is not disabled.

    v.    The Court considers the Plaintiff's RFC, age, education, and experience to determine if the Plaintiff can perform work *other than* past relevant work. If the Plaintiff can make an adjustment, the Court will find that he is not disabled.

20 C.F.R. § 404.1520(a)(4)(i)-(v).

The Plaintiff has the burden of proof for steps 1 to 4. *Carrelli*, 390 F. App'x at 435. The burden shifts to the ALJ at step 5, where the ALJ must "identify a significant number of jobs in the economy that accommodate the [Plaintiff's] RFC and vocational profile." *Carrelli*, 390 F. App'x at 435 (citation omitted). To meet this burden, the ALJ may use the medical-vocational guidelines in 20 C.F.R. Part 404, Subpart P, Appendix 2, known as "the grid." 20 C.F.R. §

404.1569; *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003). The ALJ may use the grid as a guide or rely on it in reaching a conclusion, depending upon the Plaintiff.

If a Plaintiff does have nonexertional limitations that "restrict . . . [his] performance of a full range of work at the appropriate [RFC]," then these limitations must be considered and the grid may be used as a guide. *Wright*, 321 F.3d at 616 (quoting *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528-29 (6th Cir. 1981)). In those cases, "the ALJ [is] entitled to rely on the testimony of a [VE] in reaching his decision" as to whether the Plaintiff is disabled or whether the Plaintiff is not disabled and a significant number of jobs exist that the Plaintiff can perform. *Range v. Soc. Sec. Admin.*, 95 F. App'x 755, 757 (6th Cir. 2004) (unpublished opinion).

If the Plaintiff does not have nonexertional limitations, and "the findings of fact made with respect to a[n] . . . individual's vocational factors and [RFC] coincide with all of the criteria of a particular rule [in the grid], the rule directs a conclusion as to whether the individual is or is not disabled." *Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010) (unpublished opinion) (quoting Appendix 2 at § 200.00(a)).

### C. Notice of Decision

On May 02, 2012, the ALJ denied the Plaintiff's claims and made the findings of fact and conclusions of law enumerated below.

1. The claimant meets the insured status requirements of [the Act] through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since January 21, 2010, the alleged onset date (20 C.F.R. § 404.1571 *et seq.*).

3. The claimant has the following severe impairments: type II diabetes mellitus; hypertension; left shoulder disorder; ventral hernia; major depressive disorder; and panic disorder with agoraphobia (20 C.F.R. § 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).

5. [T]he claimant has the [RFC] to perform medium work as defined in 20 C.F.R. § 404.1567(c) except works better with things rather than with people; limited to simple, repetitive work involving no more than 1 to 3 steps; no more than infrequent workplace changes; can work for two hour period with customary breaks for an eight hour workday; could formally say hello to co-workers; no work with general public; and would need supervisor who is understanding of the fact that the claimant is unlikely to respond well to criticism.

6. The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

7. The claimant . . . was 48 years old, which is defined as a younger individual 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 C.F.R. § 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See [Social Security Ruling (SSR)] 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in [the Act], from January 21, 2010, through the date of this decision (20 C.F.R. § 404.1520(g)).

(DE 10, pp. 12-13; 16-19). On May 02, 2012, the ALJ made the specific decision:

1. Based on the application for a period of disability and [DIB] filed on February 16, 2010, the claimant is not disabled under sections 216(i) and 223(d) of [the Act].

(DE 10, p. 19).

## IV.     Claims of Error

**A.     The ALJ failed to evaluate the opinion of the Plaintiff's mental health provider.**

The Plaintiff argues that the ALJ failed to appropriately evaluate the opinion of Ms. Groves, the Plaintiff's therapist at Centerstone (DE 12, p. 9; DE 17, p. 1). Specifically, he argues that the ALJ failed to evaluate this opinion as required under SSR 06-03P. (DE 12, p. 9). He argues that the ALJ "provided an erroneous basis for rejecting this opinion . . . ." (DE 12, p. 9). He also argues that the ALJ failed to "evaluate or address this opinion regarding his [RFC] finding . . . ." (DE 12, p. 9). Finally, he argues that the ALJ erred because Ms. Groves is in a "superior position to provide an opinion regarding [the Plaintiff's] mental impairments . . . ." (DE 12, p. 9).

Pursuant to 20 C.F.R. § 404.1527(b) and SSR 06-03P, the ALJ will consider all relevant evidence, including "opinion evidence from . . . medical sources who are not 'acceptable medical sources,' and 'non-medical sources' who have seen the individual in their professional capacity." SSR 06-03P, 2006 WL 2329939, at *4. Under 20 C.F.R. § 404.1527, the ALJ considers several factors in deciding what weight to give to an opinion. "Although the factors in 20 C.F.R. § 404.1527([c])[5] . . . explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,' these same factors can be applied to opinion evidence from 'other sources.' " SSR 06-03P, 2006 WL 2329939, at *4. Those factors include whether the relationship between the provider and the Plaintiff was an examining relationship, whether it was a treatment relationship, the length and frequency as well as the nature and extent of the relationship and examinations, the supportability and consistency of the opinion evidence, and the specialization

---

5 The current version of 20 C.F.R. § 404.1527 lists these factors in 20 C.F.R. § 404.1527(c). However, in the first and second version of 20 C.F.R. § 404.1527, that were in place when SSR 06-03P became effective on August 09, 2006, these factors were listed at 20 C.F.R. § 404.1527(d). Hence, in SSR 06-03P, the Ruling references 20 C.F.R. § 404.1527(d).

of the provider. 20 C.F.R. § 404.1527(c). Moreover, an ALJ "generally should explain the weight given to opinions from . . . 'other sources,' or otherwise ensure that the discussion of the evidence in the determination . . . allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning. . . ." SSR 06-03P, 2006 WL 2329939, at *6.

Here, the Plaintiff concedes that Ms. Groves is a "non-acceptable medical source and/or non-medical source" (DE 12, pp. 9; 12) and record shows that the ALJ explicitly considered the 20 C.F.R. § 404.1527(c) factors in deciding what weight to give to Ms. Groves' opinion. The ALJ repeatedly noted the treatment relationship between Ms. Groves and the Plaintiff. He documented the April 2010 intake assessment and the diagnoses that Ms. Groves documented at that time. (DE 10, p. 13). He noted the Plaintiff's slight improvement at the May 05, 2010 visit. (DE 10, p. 13). He noted the Plaintiff's reports to Ms. Groves about helping his friends during a flood. (DE 10, p. 14). This established that the relationship between Ms. Groves and the Plaintiff was a treatment relationship that spanned several years.

Moreover, the ALJ explained why he gave "only some weight" to the opinion of Ms. Groves (DE 10, p. 14) in a way that allows the Magistrate Judge "to follow the [ALJ's] reasoning . . . ." SSR 06-03P, 2006 WL 2329939, at *6. The ALJ explained that Ms. Groves is not an acceptable medical source and, "more significantly . . . , she has seen the [Plaintiff] only a handful of times in total, and only once in more than 20 months. This is an insufficient basis to support a credible medical opinion . . . ." (DE10, pp. 14-15). This established the frequency, or lack thereof, of the Plaintiff's treatment. As the ALJ explained, this diminished the supportability of Ms. Groves' opinion. (DE 10, p. 14). Therefore, the record shows that Ms. Groves was not in a "superior position" to opine about the Plaintiff's mental health.

The record also shows that the ALJ directly addressed the Plaintiff's mental health issues in his RFC determination. He included "multiple restrictions related to [the Plaintiff's] social functioning issues." (DE 10, p. 17). For example, the ALJ set out in the RFC determination that the Plaintiff would "work[] better with things than with people . . . ;" required "no more than infrequent workplace changes . . . ;" could not work with the "general public . . . ;" and "would need [a] supervisor who is understanding . . . ." (DE 10, p. 16).

Therefore, far from failing to evaluate the opinion of Ms. Groves, the record provides substantial evidence that the ALJ noted every time point at which the Plaintiff presented to her. The record provides substantial evidence that the ALJ properly considered the factors as set out in 20 C.F.R. § 404.1527 and properly determined that Ms. Groves' opinion was entitled to some, but not more, weight. Moreover, the record provides substantial evidence that the ALJ addressed the Plaintiff's mental health during his RFC explanation, and tailored the RFC determination to the Plaintiff's mental health limitations. Therefore, the Plaintiff's claim is without merit.

**B.     The ALJ failed to properly evaluate the credibility of the Plaintiff's statements.**

The Plaintiff argues, from several standpoints, that the ALJ failed to apply the 2-part test for evaluating a Plaintiff's symptoms and credibility that is required under SSR 96-7P and 20 C.F.R. § 404.1529(c). (DE 10, p. 13; DE 17, p. 2). Specifically, he argues that the ALJ failed to evaluate "the credibility of [the Plaintiff's] statements . . . ." (DE 12, p. 14). He also argues that the ALJ "failed to make clear the weight accorded to the [p]laintiff's specific allegations and testimony, and failed to properly consider the consistency of these allegations with his medical evidence . . . ." (DE 12, p. 14). Separately, he argues that the ALJ failed to account for the Plaintiff's inability to afford treatment. (DE 12, p. 14). Finally, the Plaintiff argues that an ALJ's "[f]ailure to articulate the reasons for discrediting subjective pain testimony requires, as a matter

of law, that the testimony be accepted as true." (DE 12, p. 17) (quoting *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995)).

Pursuant to SSR 96-7P and 20 C.F.R. § 404.1529(c), an ALJ applies a 2-part test to evaluate a Plaintiff's symptoms. The first step is for the ALJ to "consider whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the . . . symptoms." SSR 96-7P, 1996 WL 374186, at *2.

In the second step, "the [ALJ] evaluate[s] the intensity, persistence, and limiting effects of the . . . symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." SSR 96-7P, 1996 WL 374186, at *2. A Plaintiff's symptoms will limit his ability to do basic work activities to the extent that the symptoms can reasonably be accepted as consistent with objective medical evidence. SSR 96-7P, 1996 WL 374186, at *2. However, if objective evidence does not reflect the severity of symptoms, the ALJ requires other evidence to determine the credibility of a Plaintiff's statements about his symptoms. SSR 96-7P, 1996 WL 374186, at *3. In those cases, the ALJ considers: (1) daily activities; (2) location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of medication; (5) treatment; (6) measures to relieve pain or other symptoms; and (7) functional limitations and restrictions. 20 C.F.R. § 404.1529(c)(3). When an "ALJ [has] considered the evidence . . . and provided specific reasons for his credibility findings, his decision is entitled to great deference and is supported by substantial evidence." *Anthony v. Astrue*, 266 F. App'x 451, 460 (6th Cir. 2008).

Here, the Plaintiff concedes that the ALJ completed the first step, finding that the Plaintiff has medically determinable impairments, and the record shows that the ALJ completed the second step. He evaluated the objective medical evidence, including the reports of the

Plaintiff's primary care physician, the DDS examiners, and Ms. Groves. (DE 10, pp. 16-17). Then, the record shows, the ALJ considered the 20 C.F.R. § 404.1529(c)(3) factors, and found a lack of credibility. (DE 10, p. 17).

First, the ALJ considered the Plaintiff's daily activities, noting his mild restrictions in self-care, caring for pets, driving, household chores, shopping, and managing his finances. (DE 10, p. 14). He considered the duration of the Plaintiff's symptoms, noting that the Plaintiff had complaints of "hypertension, depression, and anxiety since at least December 2006." (DE 10, p. 12). The ALJ noted that the Plaintiff "experienced no episodes of decompensation . . . , of extended duration . . . no contrary evidence in the record as a whole." (DE 10, p. 15). The ALJ noted the aggravating factor of possibly being laid off at work in 2010 that caused "increased anxiety." (DE 10, p. 12). The ALJ also noted the precipitating factor of the loss of the Plaintiff's parents. (DE 10, p. 12). The ALJ documented the Plaintiff's medication, noting that he "receives medications for his chronic conditions and occasional treatment for minor ailments . . . ." (DE 10, p. 13). He also noted the record for the Plaintiff's mental health treatment at Centerstone. (DE 10, p. 13). The ALJ noted that the Plaintiff's depression was relieved, or at least "lessened" when the Plaintiff was engaged in "helping others." (DE 10, p. 13). Finally, the ALJ set out the Plaintiff's limitations and restrictions. He noted the Plaintiff's moderate difficulties in social functioning, as well as in concentration, persistence, or pace. (DE 10, p. 17).

After examining these factors, the ALJ explained that the Plaintiff's reports of his symptoms were not supported by the medical evidence. (DE 10, p. 17). Nonetheless, the ALJ gave the Plaintiff "much benefit of the doubt." However, regarding the Plaintiff's credibility, the ALJ explained that:

> [w]hile being sworn [in] he raised his right hand very slowly as though it were a difficult task, though the medical evidence of record shows no problems with the right upper

extremity have ever been alleged. He denied having driven a car since 2008, though the record contains instances where has admitted driving more recently. Likewise, while he initially reported shopping on a weekly basis, at the hearing he denied leaving the car during these shopping trips. These types of inconsistent reports, a lack of significant recent treatment for his impairments and the generally benign medical source statement of his primary care physician all cause me to question the [Plaintiff's] overall credibility as to the severity of his functional limitations, and I give his assertions only some weight.

(DE 10, p. 17). Therefore, the record provides substantial evidence that the ALJ evaluated the Plaintiff's symptoms and credibility, clearly articulated the weight that he gave to the Plaintiff's testimony, and considered the consistency of the reported symptoms with the evidence.

In addition, the ALJ considered the Plaintiff's financial situation. An ALJ is not permitted to draw inferences about a Plaintiff's symptoms based on "failure to seek or pursue regular medical treatment" without considering explanations such as being "unable to afford treatment." SSR 96-7P, 1996 WL 374186, at *7-8. However, the record shows that the ALJ considered the Plaintiff's reports of "being unable to pay for ongoing treatment . . . ." (DE 10, p. 13). The record shows that the ALJ did not discredit the Plaintiff or draw inferences about his circumstances based on his lack of insurance or being unable to afford treatment. Instead, the record shows that the ALJ found that the Plaintiff's testimony was not credible based on inconsistencies between the record and the testimony.

In light of the foregoing, the record provides substantial evidence that the ALJ did not fail to state reasons for discrediting, or declining to give greater weight to, the Plaintiff's testimony. The record does not, therefore, require that the Plaintiff's testimony be accepted as true. The ALJ had plenty of reasons to discredit the Plaintiff's testimony, and set these out explicitly.

Therefore, the record provides substantial evidence that the ALJ considered the evidence of record as a whole and articulated the reasoning behind his credibility findings. The Plaintiff's argument that the ALJ erred in his credibility analysis is, therefore, without merit.

C.  **The Residual Functional Capacity is not supported by substantial evidence and the ALJ failed to include all of the relevant limitations in making the assessment.**

The Plaintiff argues that the ALJ failed to perform a "function-by-function" assessment in his RFC determination as required under SSR 96-8P, and that the ALJ failed to account for the Plaintiff's left shoulder impairment in his RFC determination. (DE 12, pp. 17-18; DE 17, p. 4).

Pursuant to SSR 96-8P and 20 C.F.R. § 404.1545, an ALJ determines the Plaintiff's RFC based on all relevant evidence in the record. Relevant evidence includes: (1) the Plaintiff's medical history; (2) medical reports; (3) consultative examinations; (4) statements from medical sources about what the Plaintiff can do; and (5) descriptions of the Plaintiff's limitations, including symptom based limitations, from the Plaintiff, family, or others. 20 C.F.R. § 404.1545(a)(3). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. § 404.1545 . . . ." SSR 96-8P, 1996 WL 374186, at *1. Those functions include physical abilities, mental abilities, and other abilities "such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions . . . ." 20 C.F.R. § 404.1545(b)-(d). Succinctly, the ALJ must "first assess the nature and extent of [the Plaintiff's] . . . limitations and then determine [the Plaintiff's] [RFC] . . . " and must do so based on the entire record. 20 C.F.R. § 404.1545(b).

Here, the record shows that the ALJ considered all relevant evidence in the record. He considered the Plaintiff's medical history, dating back to 2006 and through 2012. (DE 10, pp. 12-17). The ALJ considered the medical reports from the Plaintiff's primary care physician, the consultative examiners for DDS, and Ms. Groves. (DE 10, pp. 16-17). The ALJ considered the statements from these sources, including Dr. Salyer's report of "no physical limitations" and Ms.

Groves report that the Plaintiff has "marked limitations in social functioning that would 'hinder him from performing under job pressure.'" (DE 10, pp. 13; 16). As explained at length above, the ALJ considered the Plaintiff's own reports of his symptom-based limitations.[6]

The record also shows that the ALJ completed a "function-by-function" analysis and analyzed the nature and extent of the Plaintiff's limitations before determining the RFC. He first found that the Plaintiff reported left shoulder pain but that physical examinations were otherwise unremarkable. (DE 10, p. 17). Then, he ultimately found that "the [Plaintiff] is capable of at least medium exertional level work, which gives some credit for his assertions of fatigue and low energy, and the effect of obesity . . . ." (DE 10, p. 17). He also analyzed the Plaintiff's mental health limitations, noting that the Plaintiff had both "mood and personality disorders," and noting the Plaintiff's difficulties in social functioning as well as concentration, persistence, and pace. (DE 10, pp. 14; 17). The ALJ then tailored the RFC to account for the Plaintiff's moderate limitations as well as "his possible cognitive difficulties." (DE 10, p. 17). Finally, the category of "other abilities" that the ALJ must address includes "other senses." 20 C.F.R. § 404.1545(d). To this end, the ALJ considered the Plaintiff's reports of dizziness but found that they were not supported by medical evidence. (DE 10, p. 17). Nonetheless, he still precluded jobs that require working "at heights or around dangerous machinery . . . ." (DE 10, p. 17).

As to the argument about failing to account for the Plaintiff's left shoulder injury in the RFC determination, the record shows that this argument is without merit. The Plaintiff argues that "the ALJ's finding that [the Plaintiff's] left shoulder impairment is severe necessarily means that it results in work related limitations." (DE 17, p. 4) (citing SSR 96-3P, 1996 WL 374181). SSR 96-3P provides that "an impairment or combination of impairments is considered 'severe' if

---

[6] *See Supra* Part.IV.B.

it significantly limits an individual's physical or mental abilities to do basic work activities . . . ." SSR 96-3P, 1996 WL 374181, at *1. As the record shows, the ALJ did limit the Plaintiff to medium work, not heavy or very heavy work. (DE 10, p. 16); *See* 20 C.F.R. § 404.1567. The ALJ did so after giving the Plaintiff "much benefit of the doubt" and explaining that since the Plaintiff "has apparently required no recent treatment for his shoulder disorder, and as his treating physician for this impairment found no functional limitations, [he gave] lesser weight to the DDS and consultative examiner's opinions to the contrary." (DE 10, p. 17). Therefore, although the Plaintiff seems to argue that the ALJ should have further limited the physical exertion in the RFC, this argument is without merit because the record provides substantial evidence for the limitations and the overall RFC determination that the ALJ made.

Therefore, the record provides substantial evidence that the ALJ properly considered the record as a whole and properly assessed the Plaintiff's limitations in making his RFC determination. The Plaintiff's argument that the RFC determination is unsupported is, therefore, without merit.

## V. Conclusion

There is substantial evidence within the record to support the ALJ's findings of fact and the ALJ applied the correct legal standard.

## VI. Recommendation

For the reasons explained above, the Magistrate Judge **RECOMMENDS** that the Plaintiff's Motion (DE 13) be **DENIED**, and the Commissioner's decision be **AFFIRMED**.

The parties have fourteen (14) days, after being served with a copy of this Report and Recommendation (R&R) to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within

fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140 *reh'g denied*, 474 U.S 1111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

**ENTERED** this 19th day of December, 2014.

                                                            s/Joe B. Brown_____
                                                           Joe B. Brown
                                                           U.S. Magistrate Judge